UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARY G.,[1]

Plaintiff,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

Defendant.

Case No.:  21cv2135-LR

**ORDER REGARDING JOINT MOTION FOR JUDICIAL REVIEW**

**[ECF NO. 22]**

On December 28, 2021, Mary G. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Defendant") denying Plaintiff's application for social security disability benefits and supplemental security income.  (ECF No. 1.)  Now pending before the Court is the parties' "Joint Stipulation" seeking judicial review ("Joint Motion").  (ECF No. 22 ("J. Mot.").)  For the reasons discussed below, the Court **ORDERS** that judgment be

---

[1]  Pursuant to Civil Local Rule 7.1(e)(6)(b), the Court's opinions in Social Security cases filed under 42 U.S.C. § 405(g) "refer to any non-government parties by using only their first name and last initial."

entered affirming the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

On April 26, 2018, Plaintiff filed an application for social security disability benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act, alleging disability beginning October 1, 2017.  (ECF No. 12 ("AR")[2] at 15, 76, 301.)  After her application was denied initially and upon reconsideration, (id. at 75–90, 92–107, 109–25, 127–43), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"), (id. at 157).  An administrative hearing was held on May 4, 2021.[3]  (Id. at 42–69.)  Plaintiff appeared at the hearing with counsel, and testimony was taken from her and a vocational expert ("VE").  (Id.)

As reflected in his May 26, 2021 hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 1, 2017, through the date of the decision.  (Id. at 28.)  The ALJ's decision became the final decision of the Commissioner on October 26, 2021, when the Appeals Council denied Plaintiff's request for review.  (Id. at 1–5.)  This timely civil action followed.  (See ECF No. 1.)

/ / /

/ / /

/ / /

---

[2]  "AR" refers to the Administrative Record filed on May 17, 2022.  (ECF No. 12.)  The Court's citations to the AR in this Order are to the page numbers listed on the original document rather than the page numbers designated by the Court's Case Management/Electronic Case Filing System ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

[3]  Plaintiff initially appeared for a hearing on January 7, 2020, but the hearing was continued so that Plaintiff could obtain counsel.  (See id. at 15, 70–74.)  On August 11, 2020, Plaintiff appeared for the rescheduled hearing with counsel, but that hearing was continued to allow Plaintiff's counsel to supplement medical records.  (See id. at 15, 36–41.)

## II.  SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. § 404.1520.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date.  (AR at 18.)  At step two, the ALJ found that Plaintiff had the following severe impairments: history of psoriatic arthritis, methicillin-sensitive staphylococcus aureus infection secondary to laminectomy, laminectomy at L4–L5 and spinal fusion revision surgery, fibromyalgia, depression, and anxiety.  (Id.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (Id. at 19.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to do the following:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and/or carry, push and/or pull, 20 pounds occasionally and 10 pounds frequently; stand and/or walk 2-hours in an 8-hour day; sit for 6-hours in an 8-hour day with normal breaks; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and avoid concentrated exposure to extreme cold, vibrations, and unprotected heights and dangerous moving machinery.  In addition, the claimant is limited to understanding, remembering, and carrying out simple, routine, repetitive tasks, with breaks every two hours; to no interaction with the general public; and to occasional work-related, non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or hand-off of product.  The claimant cannot perform fast paced work, and needs a low-stress environment where there are few work place changes.

(Id. at 21–22.)

At step four, the ALJ accepted and cited the VE's testimony that Plaintiff is not capable of performing her past relevant work as patient scheduler, loan clerk, and customer service representative.  (Id. at 26; see also id. at 63–65.)  Alternatively, at step five, based on the VE's testimony, the ALJ found that a hypothetical person with Plaintiff's RFC could perform the requirements of occupations that existed in significant

numbers in the national economy, such as document preparer/scanner, final assembler, and table worker/inspector.  (Id. at 27–28; see also id. at 65–67.)  The ALJ then found that Plaintiff was not disabled.  (Id. at 28.)

### III.  DISPUTED ISSUE

As reflected in the parties' Joint Motion, Plaintiff is raising the following issue as the ground for reversal and remand—whether the ALJ improperly rejected Plaintiff's testimony regarding pain and functional limitations.  (J. Mot. at 5.)

### IV.  STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error.  See id.; Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017).  "Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  In determining whether the Commissioner's decision is supported by substantial evidence, a reviewing court "must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion," and "may not reweigh the evidence or substitute [its] judgment for that of the ALJ."  Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021).  Where the evidence can be interpreted in more than one way, the court must uphold the ALJ's decision.  Id. at 1115–16; Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016).  The Court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [he or she] did not rely."  Revels, 874 F.3d at 654 (internal quotation omitted).

/ / /

/ / /

# V.  DISCUSSION

Plaintiff argues that the ALJ improperly rejected her testimony regarding subjective symptoms by failing to provide specific, clear and convincing reasons supported by substantial evidence in the record.  (J. Mot. at 6–13.)  Specifically, Plaintiff asserts that the ALJ did not provide clear and convincing reasons to discount her testimony that she could not work because she has back pain, cannot stand or sit for long periods of time, can only drive short distances, rarely cooks, and experiences anxiety and panic attacks.  (Id. at 10–11.)  Plaintiff claims that the ALJ dismissed her testimony regarding physical impairments by merely summarizing medical evidence, stating that the impartments were not disabling, and by incorrectly concluding that the symptoms have improved.  (Id. at 11.)  Plaintiff also asserts the ALJ dismissed her mental health impairments as "not disabling," which lacks the required specificity and inaccurately describes the record.  (Id. at 12.)  Plaintiff therefore moves the Court to reverse the Commissioner's decision and remand the case for an award of benefits, or, in the alternative, to remand the case to the Commissioner for further proceedings.  (Id. at 21.)

Defendant argues that substantial evidence supported the ALJ's finding that Plaintiff's testimony was not consistent with the "objective and treatment evidence of record."  (Id. at 13, 20–21.)  Defendant contends that the ALJ properly determined that Plaintiff's medical records indicated that her symptoms and impairments improved with treatment, medications, and surgical intervention, and the records contradicted the alleged severity of Plaintiff's physical impairments.  (Id. at 17–18.)  Defendant also states that the ALJ found that although Plaintiff's mental health impairments were chronic, they were not disabling because they were controllable.  (Id. at 18.)  Finally, Defendant maintains that the ALJ considered and found persuasive the findings of the State Agency psychiatric medical consultants Yanira Olaya, M.D. and Phaedra Caruso-Radin, Psy.D., and psychiatric consultative examiner Jaganath Glassman, M.D. regarding Plaintiff's limitations, which were consistent with the limitations in the ALJ's RFC determination.

1   (Id. at 19.)  Defendant therefore asks the Court to affirm the ALJ's findings, or, in the

2   alternative, remand case.  (Id. at 13, 20–21.)

3   **A.      Applicable Law**

4          The Ninth Circuit has established a two-part test for evaluating a claimant's

5   allegations regarding subjective symptoms.  See Trevizo v. Berryhill, 871 F.3d 664, 678

6   (9th Cir. 2017); see also Social Security Ruling ("SSR") 16-3p,[4] 2016 WL 1119029

7   (Mar. 16, 2016).  First, the ALJ determines whether there is "objective medical evidence

8   of an underlying impairment that could reasonably be expected to produce the pain or

9   other symptoms alleged."  Trevizo, 871 F.3d at 678 (quoting Garrison v. Colvin, 759

10  F.3d 995, 1014–15 (9th Cir. 2014)).  Second, if a claimant presented such evidence, and

11  there is no evidence of malingering, the ALJ may reject the claimant's statements about

12  the severity of his or her symptoms "only by offering specific, clear and convincing

13  reasons for doing so."  Id.

14         When evaluating subjective symptom testimony, "[g]eneral findings are

15  insufficient."  Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015).  "[A]n ALJ

16  does not provide specific, clear, and convincing reasons for rejecting a claimant's

17  testimony by simply reciting the medical evidence in support of his or her residual

18  functional capacity determination."  Id. at 489.  Instead, the ALJ must identify the

19  testimony regarding the claimant's symptoms that the ALJ finds not credible, and explain

20  what evidence undermines the claimant's testimony.  See Lambert v. Saul, 980 F.3d

21  1266, 1277 (9th Cir. 2020) (citing Treichler, 775 F.3d at 1102); see also Burrell v.

22  Colvin, 775 F. 3d 1133, 1139 (9th Cir. 2014) (finding error where the ALJ "never

23  connected the medical record" to the claimant's testimony, and did not make "a specific

24

25  _____

26  [4] "[A]ssessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and
    persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable

27  impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into
    wide-ranging scrutiny of the claimant's character and apparent truthfulness."  Trevizo, 871 F.3d at 678

28  n.5 (quoting SSR 16-3p, 2016 WL 1119029).

finding linking a lack of medical records to [the claimant's] testimony about the intensity" of her symptoms); <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995) (providing that the ALJ's reasons for discounting a claimant's testimony must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony").

"Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the ALJ considers "all of the evidence presented," including information about the claimant's prior work record, statements about symptoms, evidence from medical sources, and observations by the Agency's employees and other individuals.  <u>See</u> 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2016 WL 1119029.  In addition, the ALJ may consider other factors, such as Plaintiff's daily activities; the location, duration, frequency, and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; treatment; and any other measures used to relieve pain.  <u>See</u> 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2016 WL 1119029.

**B.**    **Plaintiff's Testimony During the Administrative Hearing and Medical Records**

   **1. Relevant testimony during Plaintiff's administrative hearing**

Plaintiff testified that she was forty-one years old at the time of the hearing and that she stopped working because of "medical issues," including back pain and arthritis, and "[m]ultiple mental" issues.  (AR at 47, 52.)  Since 2017, Plaintiff symptoms have worsened, she developed sciatic arthritis, and was diagnosed with spondylitis in her spine.  (<u>Id.</u>)  In 2019, Plaintiff had a revision spinal surgery, and two weeks later, was hospitalized for infection she developed after the surgery.  (<u>Id.</u> at 57.)  Plaintiff has not worked since June 2017, and collected unemployment through January 2018.  (<u>Id.</u> at 54.)

In 2017, Plaintiff spent two-to-three hours per day in bed, and her condition has worsened overtime.  (<u>Id.</u> at 47–48.)  She "do[es not] do a lot of standing or sitting," and is

most comfortable lying down because it does not strain her back.  (Id. at 48.)  Plaintiff has more bad days than good days.  (Id.)  On a bad day, Plaintiff's "[p]ain level is so high that pain medication doesn't even help [her] that much," and she lies down and forces herself to sleep to cope with pain.  (Id. at 49.)  On a typical day, Plaintiff gets up, lets her pets out, goes back to bed, spends four-to-five hours in bed, and in the afternoon, lets her pets out again.  (Id. at 48.)

Plaintiff lives with her seventy-five year old father and does "minimal" chores. (Id. at 49, 51–52.)  At the time of the hearing, Plaintiff and her father were living in a motel.  (Id. at 51.)  Plaintiff used to cook a lot, but stopped cooking after her 2019 spinal fusion repair surgery.  (Id. at 49.)  Plaintiff leaves home once or twice per week, can drive short distances, but cannot drive long distances because of pain.  (Id. at 50.)  She occasionally uses a walker, but the walker was not prescribed by any physician; rather, Plaintiff obtained the walker "because she knew [she] needed it."  (Id. at 58.)

With respect to her mental health symptoms, Plaintiff testified that she suffers from depression and anxiety, which affect her ability to work.  (Id. at 50.)  Her "anxiety is absolutely awful," and she experiences "quite a few panic attacks and . . . anxiety-related issues."  (Id.)  Plaintiff sometimes has problems with attention.  (Id.)  She has been receiving therapy and taking medications since 1987, and was hospitalized for a mental health issue in 2013.  (Id. at 58–59.)

## 2.  Relevant medical records

Plaintiff's May 12, 2017, lumbar spine X-ray revealed a "posterior fusion at L4–S1 with intervertebral body disc spacers."  (Id. at 464.)  It also noted a "questionable fracture of the most inferior left screw at the level of fusion at S1."  (Id.)

Plaintiff's May 24, 2017, CT scan of the lumbar spine indicated that she was status post L4–L5, surgical fusion, there was a "fracture through the mid-portion of the left S1 pedicle screw," and "minimal angulation along the mid-portion of the right S1 pedicle screw."  (Id.)  The CT scan also revealed "[s]pinous process impingement . . . at L3–L4," and "[d]egenerative disc disease at L5–S1 with associated mild right and moderate left

8

L5-S1 with associated mild right and moderate left L5–S1 neural foraminal stenosis." (Id.)

Plaintiff's March 18, 2019, CT of lumbar spine showed "stable postsurgical changes compatible with posterior fusion of the L4–S1 vertebral bodies with interbody disc spacer in place at the L4–L5 and L5–S1 levels." (Id. at 617.)  It also revealed "[s]table fracture of the midportion of the left S1 pedicular screw," and "[s]table 5 mm right paracentral calcified fragment at the L5–S1 level and mild right and moderate left neural foraminal stenosis secondary to inferior osteophyte encroachment." (Id. at 618.)

On April 3, 2019, Plaintiff had a surgery for her lumbar pseudoarthrosis L4–5 and L5–S1, lumbar radiculopathy, lumbar degenerative disc disease, and chronic pain. (Id. at 591.)  The indication for the surgery was a "posterior PLIF fusion 6 years ago with pseudoarthrosis with failed hardware noted posteriorly." (Id. at 593.)

On April 22, 2019, Plaintiff was hospitalized because she developed an MSSA infection at the left wound cite after her April 3, 2019 surgery. (Id. at 833.)  The wound was disinfected, and Plaintiff was discharged on April 26, 2019. (Id.)

On May 5, 2019, Dr. Paul Kim at the Spine Institute of San Diego noted that Plaintiff reported that she "saw pain management and they put her back on BuTrans patch and her back is feeling better already." (Id. at 745.)  He also noted that "[t]he patient is doing very well" after the surgery. (Id. at 746.)

On May 20, 2019, Dr. Khalid at the Spine Institute of San Diego stated that Plaintiff "is clinically doing better." (Id. at 749.)  Plaintiff was given prescription refill, was seeing her pain management doctor, and was "making 'progress.'" (Id.)  On June 17, 2019, Dr. Khalid noted that "[t]he patient is progressing well." (Id. at 753.)  On August 4, 2019, he stated that Plaintiff's "back symptoms have changed," and her back was "feeling better." (Id. at 754–55.)

On September 1, 2019, Dr. Kim noted that Plaintiff "has turned the corner and is doing excellent.  She has 0/10 pain." (Id. at 760; see also id. at 761.)  He also stated that Plaintiff "is very pleased with the results so far." (Id. at 761.)

9

Plaintiff's thoracic spine x-ray on October 8, 2020, showed "minimal scoliosis and spondylosis." (Id. at 1883).  Her October 8, 2020, lumbar spine x-ray revealed "[s]table examination with stable appearing postoperative changes from L4 through S1."  (Id.)

On December 3, 2020, Dr. Khalid noted that Plaintiff experienced low back pain, which she "described as a moderate dull aching," aggravated by bending, lifting, sitting, and standing.  (Id. at 1666.)  He also noted that "[t]here has been no use of assistive devices."  (Id.)

With respect to Plaintiff's mental health impairments, Plaintiff's June 7, 2018 Behavior Health Assessment noted that she experienced anxiety, depression, and grief from her mother's recent passing.  (Id. at 552.)  Plaintiff stated that she worried "about various topics, but lately about finances and her father's health."  (Id.)  She reported that she coped with anxiety with "high level of activity," including cleaning and gardening. (Id. at 552–53.)

On July 13, 2018, Dr. Glassman conducted a psychiatric disability evaluation of Plaintiff.  (Id. at 476–81.)  Plaintiff reported being "anxious virtually all the time," and stated that her "feelings of depression come and go."  (Id. at 477.)  Dr. Glassman noted that Plaintiff's "mood can be fine at times," but she had a history of self-cutting and self-picking on her face.  (Id. at 477–78.)  Plaintiff reported that she had difficulties with sleep, did not have energy or motivation, showered once a week, but brushed her teeth daily.  (Id. a 478.)  She did household chores when her pain was not too strong, enjoyed reading, quilted, and tried to "stay busy."  (Id. at 479.)

Dr. Glassman's mental status examination results noted that Plaintiff "did not appear to be sad or down; more anxious, mildly agitated and irritated."  (Id.)  He further concluded the following:

> From a psychiatric perspective, [Plaintiff] has moderate impairment in her capacity to get along adequately with others and to behave in socially-appropriate manner.  She is capable of understanding and following at least simple instructions.  She has moderate impairment in her capacity to

21cv2135-LR

1   maintain concentration, persistence, and pace, and to adapt ion changed and
2   stresses in a  workplace setting.

3   She has not been in any consistent mental health treatment.  Consistent
4   treatment could help decrease her symports and improve her functioning.

5   (Id. at 480.)

6   October 17, 2018 progress note from Nurse Practitioner Sweeney lists the
7   following diagnoses: "Major depressive disorder, recurrent, unspecified," "Generalized
8   anxiety disorder," and "Anxiety disorder, unspecified."  (Id. at 722.)  Plaintiff reported
9   that "[t]hings [we]re ok," she had excess energy, and could not sit still.  (Id.)  She was
10  feeling hopeless, her mood was "low," but her memory and cognition were intact, and
11  she displayed fair insight and judgment.  (Id. at 722–23.)  The note lists the medications
12  Plaintiff was prescribed, and states that she was taking those medications and denied any
13  side effects.  (Id. at 720.)

14  November 21, 2018 progress note from Nurse Practitioner Sweeney lists the
15  following diagnoses: "Major depressive disorder, recurrent, unspecified," "Generalized
16  anxiety disorder," and "Anxiety disorder, unspecified."  (Id. at 719.)  Plaintiff's chief
17  complaint was "[t]he holidays are a little difficult, but trying to keep myself busy."  (Id.)
18  Plaintiff reported that her mood was "okay," but she was "more angry due to holidays,"
19  and was planning to do "all the cooking for Thanksgiving."  (Id.)  Plaintiff stated that she
20  slept 4–5 hours per night and denied napping throughout the day.  (Id.)  She reported
21  depression 7/10, but during the examination was "jovial, [and] laughed a lot at this visit
22  compared to previous visits."  (Id.)  The progress note also states that Plaintiff "appears
23  less depressed than when first presenting to this clinic," and Plaintiff reported that her
24  mood was "'okay' with congruent euthymic affect."  (Id. at 719–20.)  The note lists
25  Plaintiff's prescribed medications, and states that Plaintiff was taking those medications
26  and denied any side effects.  (Id.)

27  March 22, 2019 Patient Visit Note from Physician Assistant Leon states that
28  Plaintiff's standardized depression screening and screening for anxiety revealed "no

21cv2135-LR

significant symptoms." (Id. at 1397.)  Further, when Plaintiff was asked "[h]ow often [she was] feeling down, depressed or hopeless," and "[h]ow often [she was] feeling nervous, anxious or on edge," she responded to both questions with "[n]ot at all." (Id. at 1398.)

May 17, 2019 progress note from Psychiatrist Dr. Cann lists diagnoses for "Major depressive disorder, recurrent, unspecified," "Generalized anxiety disorder," and "Anxiety disorder, unspecified." (Id. at 716.)  Plaintiff reported that she was living with her boyfriend and father, her father had medical problems, and she was her father's caretaker. (Id.)  Plaintiff stated that "she was doing well but only getting 2–3 hours of sleep at night," and explained that she was anxious, in part, due to financial pressures. (Id.)  Her psychiatric examination revealed that she was alert, oriented, calm and cooperative, had normal station and gait, and good eye contact, her behavior was appropriate, she was not agitated, and her speech was normal. (Id. at 717.)  Plaintiff's mood was depressed, affect was "dysphoric but appropriate and reactive," and she denied suicidal thoughts. (Id.)  Plaintiff had linear thinking, no confusion, intact memory, and fair judgement. (Id.)  Plaintiff's diagnosis was "Major Depressive Disorder, recurrent moderate." (Id.)

July 26, 2019 progress note from Dr. Cann lists the following diagnoses: "Major depressive disorder, recurrent, unspecified," and "Generalized anxiety disorder." (Id. at 713.)  Plaintiff stated that depression, anxiety, and insomnia were her "main problems," and that she was irritable without her prescribed medication. (Id.)  The note also states that "[t]oday, [Plaintiff] reports feeling OK." (Id.)  Plaintiff reported that "[p]art of [her] pressure is financial and she is constantly worrying about that." (Id.)  Plaintiff's psychiatric examination revealed that she was alert, oriented, calm, cooperative, had normal station and gait, and good eye contact. (Id. at 714.)  Her behavior was appropriate, she was not agitated, her mood was depressed, affect was "dysphoric but appropriate and reactive," she denied suicidal thoughts, and had "linear thinking, no

confusion, intact memory, and fair judgement." (<u>Id.</u>) Plaintiff's diagnosis was "Major Depressive Disorder, recurrent moderate." (<u>Id.</u>)

Plaintiff's November 20, 2019 Behavior Health Assessment notes state that Plaintiff had "anxious mood with congruent affect," and reported that she had anxiety and depression that occurred daily. (<u>Id.</u> at 1131.) Plaintiff described her depression as "maybe a 5" on a scale of 1–10, and "reported that in the last year she experienced a decrease in depressive [symptoms]." (<u>Id.</u>)

February 5, 2020 progress note from Dr. Cann lists diagnoses for "Major depressive disorder, recurrent, unspecified," "Generalized anxiety disorder," and "Factitial dermatitis." (<u>Id.</u> at 1128.) Plaintiff had insomnia and anxiety. (<u>Id.</u>) She could not identify a trigger, but stated that "not being financially stable was a problem," and she "was hoping to get SSI in January." (<u>Id.</u>) Plaintiff was alert, oriented, calm, cooperative, had normal station and gait, and good eye contact. (<u>Id.</u> at 1129.) Her behavior was appropriate, speech was normal, mood was depressed, affect was "dysphoric but appropriate and reactive," she denied suicidal thoughts, and had "linear thinking, no confusion, intact memory, and fair judgement." (<u>Id.</u>) Plaintiff's diagnosis was "Major Depressive Disorder, recurrent moderate." (<u>Id.</u>)

October 30, 2020 progress note from Psychiatrist Dr. Keri lists the following diagnoses: "Major depressive disorder, recurrent, unspecified," "Generalized anxiety disorder," and "Factitial dermatitis." (<u>Id.</u> at 1125.) Plaintiff reported "7/10 severe anxiety with daily panic," insomnia with daytime sleepiness, "depressed mood without suicidality," and "fair concentration." (<u>Id.</u>) Dr. Keri noted that "[Plaintiff] was hoping to get SSI in January," which was "a source of major stress." (<u>Id.</u>) Plaintiff reported that she remained in bed all day, but before her "flare up had been tending house though constantly fel[l] behind on tasks." (<u>Id.</u>) She further stated that she "[s]pends her time watching tv with some enjoyment." (<u>Id.</u>) Plaintiff also reported that she "take[s] care of too many things for other people." (<u>Id.</u> at 1125–26.) Her speech was normal, and mood was "anxious" and "depressed," she denied suicidal thoughts, and had "linear thinking,

21cv2135-LR

no confusion, intact memory, and fair judgement." (Id.)  Plaintiff's diagnosis was "Major Depressive Disorder, recurrent moderate." (Id.)

### 3. Analysis

The parties do not dispute the ALJ's finding that Plaintiff has the following severe impairments: history of psoriatic arthritis, methicillin-sensitive staphylococcus aureus infection secondary to laminectomy, laminectomy at L4–L5 and spinal fusion revision surgery, fibromyalgia, depression, and anxiety. (See AR at 18; see also J. Mot.)  Further, the parties do not contest the ALJ's determination that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR at 22.)  Accordingly, the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied.

Further, neither party alleges that the ALJ found that Plaintiff was malingering. (See J. Mot.)  The Court therefore is required to determine whether the ALJ identified which of Plaintiff's subjective allegations of impartment he discounted, and whether the ALJ provided specific, clear, and convincing reasons for doing so.  See Brown-Hunter, 806 F.3d at 489; Lambert, 980 F.3d at 1277.

The ALJ stated the following in his written opinion:

> The claimant underwent spinal fusion surgery in 2019; however, she still has back pain.  She cannot stand or sit for long periods of time.  She can only drive short distances.  She rarely cooks.  The claimant testified she has anxiety and panic attacks.

(AR at 22.)

The ALJ further stated that the "consistency of [Plaintiff's] allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record." (Id. at 24.)  The ALJ provided the following reasons for his conclusion:

> [S]ince the lumbar revision surgery, the claimant's back pain has shown improvement.  On July 17, 2019, the claimant reported her back is feeling

better (Exh. 10F, at pg. 33).  On December 3, 2020, the claimant still complained of low back pain with bending, lifting, sitting, and standing; however, she no longer used assistive devices to ambulate (Exh. 21F, at pg. 7).  A lumbar x-ray on October 8, 2020, showed stable post-operative changes in the lumbar spine (Exh. 22F, at pg. 126).  A thoracic spine x-ray on October 8, 2020, showed minimal scoliosis and spondylosis (Exh. 22F, at pg. 124).  The claimant also carries a diagnosis of fibromyalgia; however, as of April 22, 2019, it is controlled with medication (Exh. 12F, at pg. 15).  There is also minimal treatment records for the claimant's fibromyalgia.  This contravenes the alleged severity of the claimant's impairments.

. . . .

[T]he claimant's mental symptoms are chronic, but controllable.  Despite constant feelings of anxiety and depression, she has consistently normal mental status results (Exh. 9F, at pgs. 6, 9, 12, 15; 15F, at pgs. 2, 5).  On November 21, 2018, the claimant felt "OK" (Exh. 9F, at pg. 11).  Moreover, as of October 30, 2020, the claimant watched television with enjoyment (Exh. 15F, at pg. 1).  This is inconsistent with the inability to concentrate at least on a simple level.  Moreover, the claimant testified she rarely cooks, drives, or does anything for herself.  Yet on October 30, 2020, the claimant reported to "taking care of too many things for too many people" (Exh. 15F, at pg. 2).  Having responsibility for many people is inconsistent with the reduced functionality the claimant alleges.  Furthermore, on April 3, 2019, the claimant denied ever having depressive or anxiety symptoms (Exh. 17F, at pg. 186).  In terms of her physical impairments, the claimant alleges she must use an assistive device to ambulate.  However, there is no prescription for the same in the medical record.  Moreover, the record indicates as of at least December 3, 2020, the claimant no longer used assistive devices to ambulate (Exh. 21F, at pg. 7).  These inconsistencies undermine the claimant's allegations.

(Id. at 23–25.)

The Court can only assess the reasoning the ALJ provided in his decision.  See Revels, 874. F.3d at 654 (stating that a court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [he or she] did not rely"); Garrison, 759 F.3d at 1010 (same).  The Court will therefore examine the validity of the ALJ's stated reasons for discounting Plaintiff's testimony.

**a.     Improvement of Plaintiff's symptoms with treatment, medication, and surgery**

The ALJ discounted Plaintiff's testimony regarding pain and physical limitations because he found that after Plaintiff's lumbar revision surgery, Plaintiff's "back pain has shown improvement." (AR at 23.)  The ALJ also concluded that Plaintiff's fibromyalgia was controlled with medication.  (Id.)

In assessing a claimant's subjective symptoms, an ALJ may properly consider the "type, dosage, effectiveness, and side effects of any medication taken to alleviate pain," as well as "treatment, other than medication" the claimant receives or has received to relieve "pain or other symptoms."  See 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v), 416.929(c)(3)(iv)–(v); see also Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017) (stating that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"); Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").  Plaintiff testified during her administrative hearing that she stopped working because of "medical issues," including back pain and arthritis.  (Id. at 47, 52.)  As noted above, on April 3, 2019, Plaintiff had spinal surgery.  (Id. at 591.)  The records the ALJ cited in his decision show that three months after the surgery, Plaintiff reported that her back was feeling better.  (Id. at 757).  Further, Plaintiff's October 8, 2020 lumbar spine x-ray showed "stable appearing postoperative changes from L4 through S1," and her thoracic spine x-ray on the same day showed "minimal scoliosis and spondylosis."  (Id. at 1881, 1883).  Numerous medical records containing reports from Plaintiff's physicians documenting improvements in her symptoms after the April 3, 2019 spinal surgery support the ALJ's conclusion.  (See, e.g., id. at 749 (containing Dr. Khalid's May 20, 2019 report that Plaintiff was "clinically doing better" and "making 'progress'"), id. at 754–55 (documenting Dr. Khalid's June 17, 2019 finding that Plaintiff was "progressing well" and her back was "feeling better"), id. at 760–61 (containing Dr. Kim's September 1,

16

2019 report that Plaintiff "has turned the corner and is doing excellent.  She has 0/10 pain"; also noting that Plaintiff "is very pleased with the results so far").)  Additionally, as the ALJ pointed out in his written decision, Plaintiff's medical records contain reports that her psoriatic arthritis symptoms significantly improved when she was taking her medication.  (See id. at 1431–32, 1452 (documenting Plaintiff's August 5, 2019 report that she experienced 80% improvement when she takes her medication), id. at 1428 (containing October 14, 2019 progress note that Plaintiff "was previously partially improved on methotrexate and then further improved once she was started on a TNFalpha blocker").)

Accordingly, the ALJ identified specific statements regarding Plaintiff's symptoms he was discounting, and explained why he found them not fully credible.  See Guthrie v. Kijakazi, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. 2022) (finding that the ALJ reasonably relied on evidence of plaintiff's improvement with treatment to find that the plaintiff's symptom allegations were not entirely credible; reasoning that the ALJ provided specific, clear and convincing reasons for discounting the plaintiff's symptom testimony); Bowen v. Kijakazi, No. 21-35600, 2022 WL 2610242, at *1 (9th Cir. 2022) (concluding that the ALJ properly discounted plaintiff's testimony about her limitations and symptoms, where the plaintiff told her medical care providers that she was "[d]oing extremely well" and had "no complaints" after her surgery).  The Court therefore finds that the ALJ provided a specific, clear, and convincing reason to discount Plaintiff's symptom testimony.

**b.    Depression and anxiety symptoms**

The ALJ discounted Plaintiff' testimony regarding her mental symptoms, stating that they were "chronic, but controllable."  (AR at 24.)  The ALJ noted that "[d]espite constant feelings of anxiety and depression, [Plaintiff] has consistently normal mental

status results," on November 21, 2018, Plaintiff reported feeling "OK," and on April 3, 2019,[5] denied having depressive or anxiety symptoms. (<u>Id.</u> at 24–25.)

Plaintiff testified during the administrative hearing that she suffers from anxiety and depression, which affect her ability to work, her "anxiety is absolutely awful," and she experiences "quite a few panic attacks and . . . anxiety-related issues." (<u>Id.</u> at 50.) The Court carefully examined the reasons the ALJ discussed in discounting Plaintiff's testimony and the medical records the ALJ cited in support of his conclusion. As the ALJ stated in his written decision, Plaintiff's mental status examination results were within the norm. (<u>See</u> <u>id.</u> at 24; <u>see also</u> <u>id.</u> at 714, 717, 719–20, 722–23, 1126, 1128–29, 1399.) Further, on November 21, 2018, Plaintiff reported that her mood was "okay," but she was "more angry due to holidays," (<u>id.</u> at 719), and on March 22, 2019, Plaintiff denied having depressive or anxiety symptoms, (<u>id.</u> at 1398). Additionally, when asked on March 22, 2019, "[h]ow often [she was] feeling down, depressed or hopeless," and "[h]ow often [she was] feeling nervous, anxious or on edge," Plaintiff responded with "[n]ot at all." (<u>Id.</u>) Plaintiff's other medical records also document statements to medical care providers regarding Plaintiff's mental health impairments that are inconsistent with her testimony during the administrative hearing. (<u>See e.g.</u>, <u>id.</u> at 477 (containing Dr. Glassman's July 13, 2018 report that Plaintiff's "feelings of depression come and go," and her "mood can be fine at times"), <u>id.</u> at 1131 (documenting Plaintiff's report on November 20, 2019, that her depression was "maybe a 5" on a scale of 1–10, and she "reported that in the last year she experienced a decrease in depressive [symptoms]").) As such, Plaintiff's reports to her medical care providers regarding her depression and anxiety conflict with Plaintiff's testimony during the administrative hearing that she

---

[5] The Court notes that the Patient Visit Note is dated March 22, 2019. (AR at 1397, 1400.) The ALJ cited April 3, 2019, the date of Plaintiff's planned surgery for which she was undergoing screening. (<u>See</u> <u>id.</u>; <u>see also</u> <u>id.</u> at 24.) The planned surgery date is listed right above Plaintiff's Behavioral Health Screening responses at issue. (<u>See</u> <u>id.</u> at 1398.) As such, a minor discrepancy in the date the ALJ cited appears to be a typo.

21cv2135-LR

suffers from debilitating anxiety and depression.  "When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."  Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004) (quoting Andrews, 53 F.3d at 1041); Ahearn, 988 F.3d at 1115–16 (same).

Accordingly, the ALJ identified Plaintiff's specific statements regarding her mental symptoms he found not credible, and explained what evidence undermined Plaintiff's testimony.  Such identification constitutes a specific, clear, and convincing reason to discount Plaintiff's symptom testimony.

### c.     Daily Activities

The ALJ stated in his written decision that Plaintiff's testimony that she rarely cooks, drives, or does anything for herself is inconsistent with her October 30, 2020 report that she is "taking care of too many things for too many people," because "[h]aving responsibility for many people is inconsistent with the reduced functionality [Plaintiff] alleges."  (AR at 24.)  Additionally, the ALJ reasoned that Plaintiff's report of watching television with enjoyment is inconsistent with her alleged inability to concentrate at least on a simple level.  (Id.)

An ALJ may properly consider the claimant's daily activities in evaluating testimony regarding subjective pain.  See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).  There are "two grounds for using daily activities to form the basis of an adverse credibility determination": an ALJ may find that daily activities either (1) contradict the claimant's other testimony, or (2) meet the threshold for transferable work skills.  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); see also Steele v. Berryhill, Case No.: 3:17-cv-01923-LAB (RNB), 2018 WL 2718033, at *3 (S.D. Cal. June 6, 2018) (same).  In this case, the ALJ is relying on the first ground.

Plaintiff testified during her administrative hearing that she does "minimal" chores, rarely cooks, leaves home once or twice per week, and rarely drives.  (AR at 49–50.)  The ALJ cited October 30, 2020 note from Plaintiff's Psychiatrist Dr. Keri, documenting Plaintiff's report that she lived with her boyfriend and father, and was taking care of "too

19

many things for other people." (Id.)  Plaintiff's testimony during the administrative hearing regarding her daily activities is inconsistent with her report to Dr. Keri.  The testimony is also inconsistent with Plaintiff's other reports to her medical care providers. (See e.g., id. at 115 (containing June 27, 2018 report that Plaintiff "reiterated many times feeling that she takes on other people[']s problems," and "does lots of work for others"), id. at 719 (containing November 21, 2018 progress note that Plaintiff "will be doing all the cooking for Thanksgiving"), id. at 716 (containing May 17, 2019 progress note that Plaintiff's father has medical problems and "she is his caretaker"), id. at 394–95, 401 (containing Plaintiff's function report dated May 10, 2019, in which she stated that she prepares breakfast every day and dinner "some nights," takes care of pets, cooks and grocery shops for her father, cleans, does laundry and yard work, and "sometimes" mops the floors).)  Additionally, Dr. Keri's October 30, 2020 progress note states that Plaintiff reported that she "[s]pends her time watching tv with some enjoyment." (Id. at 1125.) The note also contains Dr. Keri's finding that Plaintiff had "fair concentration." (Id.) "When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." Batson, 359 F.3d at 1198 (quoting Andrews, 53 F.3d at 1041); Ahearn, 988 F.3d at 1115–16 (same); see also Elizondo v. Astrue, No. 1:09–cv–0989 SKO, 2010 WL 3432261, at *5 (E.D. Cal. Aug. 31, 2010) ("The mere fact of a claimant's carrying on certain daily activities does not necessarily detract from credibility as to overall disability"; however, a "negative inference is permissible where the activities contradict the other testimony of the claimant[.]").

    Plaintiff's testimony regarding her daily activities contained several internal inconsistencies, and the ALJ rationally concluded that Plaintiff's testimony regarding her daily activities contradicted Plaintiff's testimony regarding her level of functioning.  See Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (stating that an ALJ may properly rely on inconsistencies between claimant's testimony and claimant's daily activities); see also Scolari v. Kijakazi, Case No.: 21-cv-1250-BLM, 2022 WL 6785752, at *4–5 (S.D. Cal. Oct. 11, 2022) (finding that substantial evidence supported the ALJ's

determination that plaintiff's daily activities were not consistent with her subjective testimony and claims, which was a clear and convincing reason to discount the plaintiff's subjective testimony and claims).  The Court therefore finds that the ALJ provided a legally sufficient reason to discount Plaintiff's testimony.

### d.   Use of assistive device to ambulate

The ALJ stated in his written decision that although Plaintiff "alleges she must use an assistive device to ambulate," there is no prescription for the assistive device in the medical record, and the record indicates that on December 3, 2020, Plaintiff no longer used assistive devices to ambulate.  (AR at 25.)  Plaintiff testified during the administrative hearing as follows: "I have a walker that I do use on occasion, more often than not anymore, but that was actually something that I had gotten myself because I knew I needed it."  (Id. at 58.)  Having reviewed the transcript of Plaintiff's testimony, the Court notes that the ALJ mischaracterized Plaintiff's testimony by stating that she testified that she "must" use an assistive device to ambulate.  (See id. at 25.)  Rather, Plaintiff testified that she *occasionally* uses a walker.  (Id. at 58.)  She also stated that the walker *was not prescribed* by any physician and acknowledged that she obtained the walker herself.  (Id.)  Accordingly, this reason cited by the ALJ is not clear and convincing, and the Court disregards it.  Nevertheless, as discussed above, the ALJ provided several other clear and convincing reasons for discounting Plaintiff's testimony regarding her pain and functional limitations.  See Scolari, 2022 WL 6785752, at *4–5, *8 (finding that the ALJ provided clear and convincing reasons for rejecting plaintiff's subjective symptom testimony, where the plaintiff's testimony regarding her symptoms was inconsistent with her activities of daily living, the nature of treatment, and her progress and improvement); Heather C. v. Saul, Case No.: 3:19-cv-01669-AJB-RNB, 2020 WL 1169691, at *6–8 (S.D. Cal. Mar. 10, 2020) (finding that the ALJ provided clear and convincing reasons for rejecting plaintiff's subjective symptom testimony regarding her physical and mental impairments, where the plaintiff continuously engaged

in a large number of activities of daily living, and her condition improved with treatment and medication).

The Court therefore finds that the ALJ provided clear and convincing reasons, supported by the substantial evidence of record, for not fully crediting Plaintiff's subjective symptom testimony.  Accordingly, the Court finds that reversal is not warranted based on the ALJ's alleged failure to make a proper adverse credibility determination.

## VI. CONCLUSION AND ORDER

For the reasons state above, the Court finds that the ALJ properly identified which of Plaintiff's statements he discounted, and that the ALJ provided specific, clear, and convincing reasons for doing so.  The Court therefore **ORDERS** that judgment be entered affirming the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and dismissing this case.

**IT IS SO ORDERED.**

Dated:  March 20, 2023

Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge

21cv2135-LR